UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRYAN COLBY CHAPPELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 2:20-cv-00686-MPB-MG |
| KIMBERLY RHOADS Dental Assistant - Ms., JENNIFER VAN WAGONER Dr., | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Bryan Chappell, a Bureau of Prison ("BOP") inmate formerly incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI Terre Haute"), brings this civil action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Mr. Chappell alleges that the defendants, dental hygienist Kimberly Rhoads and dentist Dr. Jennifer Van Wagoner, violated his Eighth Amendment rights by not providing constitutionally adequate medical treatment for a broken tooth between December 2019 and April 2020.

The defendants raised the affirmative defense that Mr. Chappell failed to exhaust his available administrative remedies before filing this lawsuit as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and requested a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Dkts. 39, 93, 94.

The matter was referred to United States Magistrate Judge Mario Garcia pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the question of whether Mr. Chappell exhausted his administrative remedies. A *Pavey* hearing was held on December 6, 2022, and Judge Garcia subsequently issued

1

a Report and Recommendation ("the Report") that found that Mr. Chappell did not exhaust available administrative remedies. Dkt. 145.

Mr. Chappell has filed objections to the report.[1] Dkt. 146. Defendants have responded, dkt. 147, and Mr. Chappell has filed a reply, dkt. 150. Based on the applicable law, the record, and the following reasons, the objections are **overruled**, and the Court **adopts** the Report and Recommendation in full.

## I. Legal Standards

### A. Review of Magistrate Judge's Decision

Federal Rule of Civil Procedure 72(b)(3) provides that the Court will review recommendations on dispositive motions *de novo*. Under *de novo* review, the Court is free to accept, reject, or modify the recommended disposition. *Id.* As to nondispositive matters, the Court must modify or set aside any part of the order that is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(a). "The clear error standards means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Industries Co., Inc.*, 126 F.3d 926, 943 (7th Cir. 1997).

"[A] district court, when faced with an objection to a magistrate judge's report, need not rehear live testimony before relying on a magistrate's recommendation and credibility determinations." *McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665 (7th Cir. 2021) (citing *United States v. Raddatz*, 447 U.S. 667, 680−81 (1980)). A district court is, however, required to hold a *de novo Pavey* hearing if it rejects the magistrate judge's credibility determinations. *Id.* at 665−66.

---

[1] The Court is grateful for the zealous advocacy that Mr. Chappell's recruited counsel, Dean Brackenridge and Katherine Slisz, have provided throughout their representation of Mr. Chappell.

### B.     Exhaustion of Administrative Remedies

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. §1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524−25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532.

"To exhaust available remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

It is the defendants' burden to establish that the administrative process was available to Mr. Chappell and that he failed to use it. *Reid*, 962 F.3d at 329; *see also Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted). An administrative procedure is unavailable when 1) the process operates as a "simple dead end," 2) when it is so opaque that it is incapable of use, or 3) when

3

"prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In *Pavey*, the Seventh Circuit instructed district courts to conduct a hearing when "exhaustion is contested" to determine whether a plaintiff has exhausted his administrative remedies. *Pavey*, 544 F.3d at 742. In holding that hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011) (post-*Pavey* hearing, affirming factual findings of a magistrate judge, whose Report included factual findings that the plaintiff was not credible).

## II.     Background

The Court recounts only the facts that are relevant to Mr. Chappell's objections. The first objection is that Judge Garcia incorrectly admitted and considered prejudicial evidence about Mr. Chappell's mental health status. The second objection is that the Court incorrectly found that the administrative remedy process was available due to improper credibility determinations. Dkt. 146 at 5.

### A.  The Administrative Remedy Process and the Issue in this Case

The BOP's administrative remedy program typically consists of four steps, summarized as follows: (1) an inmate must file a BP-8 with the institution and try to informally resolve the issue; (2) if the issue is not informally resolved, the inmate must file a BP-9 for response by the Warden; (3) if the inmate is not satisfied with the Warden's response, the inmate then mails a BP-10 to the Regional Office; and (4) if the inmate is not satisfied with the Regional Director's response, he next mails a BP-11 to the Central Office. Dkt. 132 at ¶ 5.

In this case, Mr. Chappell filed a BP-8 and a BP-9, so the only issue is whether administrative remedies were available with respect to the BP-10 and BP-11. *See* Ex. 13 at TH0228

(the BP-8) and Ex. 19 at TH0268 (the BP-9). Mr. Chappell argued that the process was unavailable due to the defendants' threatening behavior and because prison staff failed to provide necessary forms or threw them away.

### B. Motion in Limine and Admission of Evidence

Before the *Pavey* hearing, Mr. Chappell filed a motion in limine requesting that the Court exclude evidence related to Mr. Chappell's mental health and mental health treatment, arguing that such information would be highly prejudicial under Federal Rule of Evidence 403. Dkts. 114, 115. Mr. Chappell relied on *Rascon v. Hardiman*, 803 F.3d 269, 278 (7th Cir. 1986), a case in which the Seventh Circuit upheld a magistrate judge's decision to exclude evidence of the decedent's mental health history in an excessive force case because (1) it would be of little probative value since the court had already heard "other substantial evidence" related to the decedent's mental and emotional health, and (2) the judge feared that admitting additional information about the decedent's mental health history would classify the decedent as a "mental case" and suggest that the defendants' actions in subduing him were therefore appropriate.

Before the hearing, Judge Garcia denied Mr. Chappell's motion in limine as it related to the admission of evidence about Mr. Chappell's mental health history. Dkt. 133 at 2−3. With respect to *Rascon*, Judge Garcia noted "that while the stigma has not disappeared entirely, society has come a long way in the past four decades from viewing individuals with mental health struggles as 'mental cases.'" Dkt. 132 at 2. Second, Judge Garcia found that evidence related to Mr. Chappell's mental health was relevant to his claims that administrative remedies were unavailable due to Ms. Rhodes' and Dr. Van Wagoner's behavior. *Id.* at 3. Mr. Chappell renewed his objection at the hearing, and Judge Garcia denied it for the same reasons. Tr. at 8:14−9:21, 137:25−138:7.

5

Thus, at the *Pavey* hearing, witnesses testified about Mr. Chappell's mental health diagnoses and the impact they had on his behavior, and a few treatment records and emails that referred to his mental health history were admitted.

Mr. Chappell objects to the admission of the evidence, and, interrelated to his second objection, he alleges that the admission of the mental health evidence resulted in credibility determinations that were contrary to law. Dkt. 146 at 7. He argues that Judge Garcia's Report demonstrates that the evidence was unfairly prejudicial because his "mental health is noted explicitly on approximately four pages, Dkt. [1]45, 7−10, and the derogatory tone of references to Chappell's mental health linked to his credibility is persistent throughout the Report and Recommendation." Dkt. 146 at 6. Mr. Chappell argues that his treating psychologists' testimony "unfairly and unduly prejudiced Chappell, leading the Court to determine that he was not credible and categorizing him more as an unbelievable 'mental case,' wrongfully discrediting his testimony." *Id.* at 7.

### C. Credibility Determinations

In the Report, Judge Garcia discussed Mr. Chappell's mental health and considered its impact on his interactions with the defendants and other BOP staff. He noted in a footnote that Mr. Chappell had been diagnosed with Major Depressive Disorder with Psychotic Features, Posttraumatic Stress Disorder, and Psychotic Disorder Due to Another Medical Condition with Delusions, and that Dr. Carmicheal, Mr. Chappell's treating psychologist, explained that he suffered from delusions that medical and prison staff were mistreating him. Dkt. 145 at 8, n.2. Judge Garcia recounted both Mr. Chappell's and former inmate Robert Rosso's recollections and Ms. Rhodes', Dr. Van Wagoner's, Dr. Carmicheal's, and Dr. Patterson's recollections of encounters Mr. Chappell had with them to discuss his filing of a BP-8 and BP-9 form. *Id.* at 6−11.

6

Mr. Chappell and Mr. Rosso testified that Ms. Rhodes was aggressive and threatened Mr. Chappell, while the defense witnesses testified that she was calm and Mr. Chappell was the aggressive party. *Id.* Judge Garcia found the defendants' and defense witnesses' testimony credible with respect to their memories of the meetings and found that no one threatened Mr. Chappell or discouraged him from pursuing his administrative remedies at the BP-8 and BP-9 level. *Id.* at 9, 11−13. The Court noted that Mr. Chappell's behavior—refusing to sign the BP-8 and proceeding to the BP-9—contradicted his claim that he was too intimidated by staff to pursue administrative remedies. *Id.* at 13.

With respect to the BP-10 and BP-11 forms, Judge Garcia found that Mr. Chappell's testimony that BOP staff threw away or intentionally lost these forms was not credible. *Id.* at 12. He made this conclusion based on evidence that inmates from Mr. Chappell's housing unit had mailed 50 BP-10 forms and 22 BP-11 forms between December 2019 and May 2020, and that Mr. Chappell had himself submitted a BP-10 on an unrelated matter in February 2020. *Id.* Judge Garcia further concluded that there was no credible evidence that anyone destroyed or tampered with Mr. Chappell's mail to prevent him from exhausting his dental care remedy. *Id.* at 13. These credibility findings were based in part on Mr. Chappell's testimony that (1) he had a stroke that affected his memory; (2) he could not remember if he handed the forms to a guard or took them to the mailroom; and (3) although he believed someone threw his forms away, he acknowledged he did not see anyone throw the forms away and no one told him that these forms had been thrown away. *Id.* at 11.

### III. Discussion

#### A. Mental Health Evidence

Judge Garcia's decision to admit evidence is a non-dispositive ruling that may be set aside only if it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a).

As noted above, Mr. Chappell argues that Judge Garcia erred in permitting any evidence related to Mr. Chappell's mental health, relying on *Rascon v. Hardiman*, 803 F.3d 269, 278 (7th Cir. 1986) and *Wallace v. Mulholland*, 957 F.2d 333, 336 (7th Cir. 1992), two cases in which the Seventh Circuit affirmed a lower court's decision to exclude evidence related to mental health in excessive force cases. But affirming a court's decision to exclude evidence is not the same as finding its admission violates Rule 403. In upholding the exclusion of the records in *Rascon*, the Seventh Circuit noted that "the trial court's balancing of probative value and unfair prejudice is highly discretionary and its decision on admissibility will be accorded great deference." *Rascon*, 803 F.3d at 278 (cleaned up). For the following reasons, the Court concludes that Judge Garcia did not clearly err in admitting this evidence.

"'Rule 403 was never intended to exclude relevant evidence simply because it is detrimental to one party's case; rather, the relevant inquiry is whether any *unfair prejudice* from the evidence substantially outweighs its probative value.'" *Wilson v. Groaning*, 25 F.3d 581, 585 (7th Cir. 1994) (quoting *Cook v. Hoppin*, 783 F.2d 684, 689 (7th Cir. 1986)). The probative value of this evidence was high because Mr. Chappell's recollection of relevant events may have been affected by his mental health. *See Est. of Escobedo v. Martin*, 702 F.3d 388, 401–02 (7th Cir. 2012) (finding court did not err in introducing mental health evidence to show that suicidal decedent was difficult to deal with when he was high on cocaine to explain why psychologist did not participate in negotiations between him and police officers). Further, the Court finds there was no unfair

prejudice because there is no evidence that Judge Garcia put undue weight on the mental health evidence. Indeed, Judge Garcia observed that regardless of who the bad actor was in these tense exchanges, Mr. Chappell proceeded with the BP-9. Dkt. 145 at 12−13; *see also id.* at 7 (citing Mr. Rosso's testimony that when Ms. Rhodes left Mr. Chappell's cell, he reacted to the incident by calling her crazy). With respect to the BP-10s and BP-11s, Judge Garcia cited Mr. Chappell's stroke-related memory difficulties rather than his mental illness. Accordingly, Mr. Chappell's objection related to the admission of mental health evidence is **overruled**.

### B. Credibility Determinations

As to Judge Garcia's credibility determinations in the Report, the Court conducts a *de novo* determination of the portions of the Report to which objections have been filed. *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995).

Judge Garcia had the opportunity to view the witnesses live and assess their credibility.[2] *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1052−53 (7th Cir. 1995) (noting deference must be given to magistrate judge on credibility determinations because the judge had "the best opportunity to observe the verbal and nonverbal behavior of the witnesses focusing on the subject's reactions and responses to the interrogatories, their facial expressions, attitude, tone of voice, eye contact, posture and body movements[.]") (cleaned up). Having reviewed the transcript and deposition testimony, the Court agrees with his credibility determinations. Nothing in the Report indicates that Judge Garcia portrayed Mr. Chappell with a "derogatory tone" with regard to his mental health. Mr. Chappell does not point to any derogatory statements, because there were none. Rather, the Report reflects that Judge Garcia carefully considered all the evidence and did not simply write off Mr. Chappell's testimony due to his mental health. References to Mr. Chappell's mental health

---

[2] Dr. Jacqueline Carmicheal and Robert Rosso did not testify at the hearing, but video depositions were conducted and submitted as exhibits.

were mostly in the context of why the defendants took the actions they took—that is, calling a meeting with his treating psychologist after Ms. Rhodes unsuccessfully tried to persuade him to sign the BP-8. Dkt. 145 at 7−9. Further, Judge Garcia relied on extrinsic evidence—records showing the number of BP-10 and BP-11 forms submitted by inmates in Mr. Chappell's housing unit during the relevant timeframe—to support his credibility findings that prison staff did not make the process unavailable by throwing away these forms. Mr. Chappell's testimony regarding the steps he took to mail the BP-10 and BP-11 forms was vague on account of his admitted memory issues, so Judge Garcia was well within his discretion to discredit his testimony. *See Brisco v. Wills*, 2023 WL 6174417, at *2 (7th Cir. Sept. 22, 2023) (finding magistrate judge's credibility findings on exhaustion issue were not clearly erroneous where plaintiff's cellmate's testimony that staff destroyed grievances had several discrediting inconsistencies). The Court adopts Judge Garcia's thoughtful credibility determinations.

Because the Court agrees with Magistrate Judge Garcia's conclusions set forth in the Report and Recommendation, the Court **overrules** Mr. Chappell's Objections, dkt. [146], and **adopts** Magistrate Judge Garcia's Report and Recommendation, dkt. [145].

### IV.   Conclusion

For the foregoing reasons, Mr. Chappell's objections, dkt. [146], are **overruled**, and the Court **adopts** Magistrate Judge Garcia's Report and Recommendation, dkt. [145]. Mr. Chappell's claims are **dismissed without prejudice**. Final Judgment shall enter by separate entry.

**IT IS SO ORDERED.**

Dated: September 29, 2023

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

BRYAN COLBY CHAPPELL
25865-009
MARIANNA - FCI
MARIANNA FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 7007
MARIANNA, FL 32447

All Electronically Registered Counsel